**STATE**

v.

**Gabriel SEAMANS.**

No. 2007–136–C.A.

Supreme Court of Rhode Island.

Dec. 3, 2007.

Aaron L. Weisman, Providence, for Plaintiff.

Catherine Gibran, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

WILLIAMS, Chief Justice, for the Court.

The defendant, Gabriel Seamans (defendant), appeals from a Superior Court judgment that he violated the conditions of his probation imposed in conjunction with a suspended sentence. This case came before the Supreme Court for oral argument on October 30, 2007, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After

hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that this appeal may be decided at this time without further briefing or argument. For the reasons hereinafter set forth, we affirm the ruling of the Superior Court.

## I

### Facts and Travel

On July 26, 2000, defendant entered a plea of *nolo contendere* to the offense of second-degree child molestation, and he thereafter was sentenced to eighteen months to serve and ten and one-half years suspended. Five years later, on November 30, 2005, defendant pled *nolo contendere* to the offense of failure to notify law enforcement of sex offender address change. On January 5, 2007, the Superior Court held a probation violation hearing. The facts underlying the probation violation were revealed at the violation hearing and are as follows.

On August 31, 2006, Sara,[1] fifteen years old at the time, spent the night at Danielle Schultz's (Danielle) house; Danielle is a friend of Sara from school. On the morning of September 1, 2006, Sara and Danielle went to Rogers High School in Newport for a few hours to attend a vocational class in Nursing Health Careers because the regular school year had not yet commenced. Both Teresa Schultz (Danielle's mother) and defendant, who was twenty-six years old, picked up Sara and Danielle from school at about 9 a.m. The four then went to Sara's house for an hour or two, where Sara cleaned her room and Teresa Schultz ironed her work uniform. Upon completing these tasks, the four drove to Providence, where defendant visited his young daughter for about an hour. From there, defendant drove them to Narragan-

sett, where he dropped off Teresa Schultz at work.

Sara, Danielle, and defendant remained in Narragansett and took a walk on the beach. Sara testified that they "got on the topic of virginity somehow" and that defendant said "it's, like, normal to lose your virginity when you're, like, a teenager, like [fifteen] and stuff." After having this conversation, defendant drove the girls back to Danielle's house in Newport. During the ride to Newport, Sara sat in the passenger seat of the car because it was difficult for her, with her arthritic condition, to get in the backseat of the two-door car. While driving, defendant repeatedly rubbed Sara's knee and leg, making her feel uncomfortable and "creeped out."

After arriving at Danielle's house, Danielle decided to stay home with her boyfriend rather than accompany defendant back to Narragansett to pick up her mother from work. Danielle's younger sister, Hayley, wanted to go with defendant, but defendant "wouldn't let her" accompany Sara and him back to Narragansett. Although Sara did not want to travel with defendant by herself, she felt obligated because "he said [she] had to."

The defendant drove Sara to Narragansett, where defendant parked the car at a beach. Sara testified that defendant then told her to "[g]et in the [backseat]." The defendant followed Sara into the backseat and then asked her to give him a "[b]low job." Sara testified that she put her mouth on defendant's penis for a time span that "seemed like forever" until he "climaxed." Sara also testified about additional physical contact with defendant's penis: "[defendant] had my hand on his hand, and he had it moving up and down * * * [for] a long time * * * then he, like, got on, like, laid on top of me in the

---

1. Sara is not the victim's real name.

[backseat] and I told him I was on my period." After hearing this, defendant "stopped" and got out of the car.

The defendant subsequently brought Sara to a nearby restaurant, where they ate dinner. They waited a bit longer for Teresa Schultz to get out of work, and then defendant drove Sara and Teresa back to Newport. A couple of days later Sara told Danielle what happened with defendant, and Danielle subsequently told Sara's mother.

The Narragansett Police Department filed a criminal complaint alleging that defendant violated G.L.1956 § 11–37–6 by engaging in "sexual penetration with [Sara], a person over the age of fourteen years and under the age of consent, sixteen years of age."[2] The next day, the state filed a violation report against defendant pursuant to Rule 32(f) of the Superior Court Rules of Criminal Procedure, alleging that he had violated the terms of his probation.

At defendant's probation violation hearing, the hearing justice reviewed the testimony and found Sara's testimony to be credible. The hearing justice was reasonably satisfied that defendant failed to keep the peace and be of good behavior. He further determined that defendant violated the terms of his probation by engaging in sexual conduct with a girl under the age of sixteen, in violation of § 11–37–6. The hearing justice ordered defendant to serve ten and one-half years of the suspended sentence from defendant's initial second-degree child molestation offense. The defendant timely appealed.

On April 25, 2007, defendant pled *nolo contendere* to third-degree sexual assault, the very offense that underlay the proba-

tion violation that defendant is challenging, and a judgment of conviction was entered thereon.

## II

### Analysis

On appeal, defendant argues that the hearing justice abused his discretion in sentencing defendant as a probation violator because the testimony did not support such a decision. Specifically, defendant challenges the hearing justice's finding that Sara was a credible witness. The defendant further argues that his subsequent *nolo contendere* plea to the offense that underlay the probation violation did not render moot his challenge to the probation violation judgment.

### A

#### Standard of Review

■■■ It is well settled that "[w]hen reviewing a finding of a probation violation, this Court will consider only 'whether the hearing justice acted arbitrarily or capriciously in finding a violation.'" *State v. Vieira*, 883 A.2d 1146, 1148 (R.I.2005) (quoting *State v. Snell*, 861 A.2d 1029, 1031 (R.I.2004)). At a probation violation hearing, the state must prove, through reasonably satisfactory evidence, that a defendant violated one or more terms of his probation by failing to keep the peace or remain of good behavior. *Id.* (citing *Snell*, 861 A.2d at 1030–31; *State v. Gautier*, 774 A.2d 882, 886–87 (R.I.2001)). The state is not required to prove, beyond a reasonable doubt, that a defendant has committed a crime. *Id.* "The hearing justice can draw reasonable inferences from the evidence

**2.** General Laws 1956 § 11–37–6 provides that "A person is guilty of third degree sexual assault if he or she is over the age of eighteen (18) years and engaged in sexual penetration with another person over the age of fourteen (14) years and under the age of consent, sixteen (16) years of age."

presented to determine whether the defendant violated the terms of his probation." *State v. Piette,* 833 A.2d 1233, 1236 (R.I. 2003). Thus, this Court will uphold an adjudication of probation violation if the hearing justice acted neither arbitrarily nor capriciously. *State v. Johnson,* 899 A.2d 478, 481 (R.I.2006).

■■ "It is well established that '[a]ssessing the credibility of a witness in a probation violation hearing is a function of the hearing justice, not this Court.'" *State v. Summerour,* 850 A.2d 948, 951 (R.I.2004) (quoting *State v. Waite,* 813 A.2d 982, 985 (R.I.2003)). When the issue at the probation violation hearing concerns "'a determination of credibility, * * * and the hearing justice, after considering all the evidence, accepts one version of events for plausible reasons stated and rationally rejects another version, we can safely conclude that the hearing justice did not act unreasonably or arbitrarily in finding that a probation violation has occurred.'" *Id.* at 952 (quoting *Waite,* 813 A.2d at 985).

## B

### Mootness

■ The defendant entered a *nolo contendere* plea to the third-degree sexual assault offense that underlies the adjudication of probation violation. Because defendant pled *nolo contendere,* the state contends that such a plea renders moot any challenge to the Superior Court's determination that defendant violated the terms of his probation. This Court has not yet considered the effect of a defendant's intervening *nolo contendere* plea to the criminal charge arising out of the conduct leading to the challenged probation violation.

In 2005, the Connecticut Supreme Court held:

"Where, subsequent to a conviction of violation of probation, a defendant is criminally convicted for the same conduct underlying the violation of probation, his appeal from that judgment of violation of probation is rendered moot because there is no longer any live controversy about whether he engaged in the conduct for which his probation was violated." *State v. Singleton,* 274 Conn. 426, 876 A.2d 1, 8 (2005).

In *Singleton,* the defendant was on probation; one condition of his probation was that the defendant could not violate any Connecticut criminal laws. *Id.* at 3. Several months into serving his probation sentence, a Connecticut trial court found that the defendant had possessed an illegal substance and therefore had violated the terms of his probation. *Id.* The defendant appealed the lower court judgment, alleging that the state had not met its burden of establishing the probation violation. *Id.* While the appeal was pending, the defendant pled guilty to possession of illegal drugs with the intent to sell, based on the criminal conduct underlying his probation violation. *Id.* After reviewing these facts, the Connecticut Supreme Court concluded that the defendant's appeal from the violation of probation judgment was moot. *Id.* at 8. Because the defendant entered a guilty plea to the underlying criminal conduct, a controversy about whether the defendant committed the criminal conduct giving rise to the probation violation no longer existed. *Id.*

The facts of the instant matter are quite similar. The defendant was on probation after pleading *nolo contendere* to two offenses: second-degree child molestation and failure to notify law enforcement of sex offender address change. While on probation, the hearing justice found that defendant failed to keep the peace and be of good behavior and therefore violated the terms of his probation. After the hearing justice concluded that defendant violated

his probation, defendant appealed to this Court. While the appeal was pending, defendant pled *nolo contendere* to third-degree sexual assault, the same offense that underlay the probation violation, and a judgment of conviction was entered. This admission of guilt to the underlying criminal offense is tantamount to an admission of fault with respect to the probation violation.

The defendant attempts to distinguish this case from *Singleton* by explaining that the defendant in *Singleton* pled *guilty* to the underlying offense, but he entered a *nolo contendere* plea. Yet, this distinction is without merit. This Court has held that "[i]n Rhode Island, a nolo plea is equivalent to a plea of guilty." *State v. Feng*, 421 A.2d 1258, 1266 (R.I.1980). Furthermore, the Connecticut court did not refer to a guilty plea, but rather referred to anytime "a defendant is *criminally convicted.*" *Singleton*, 876 A.2d at 8. (Emphasis added.). Importantly, both guilty pleas and pleas of *nolo contendere* constitute "criminal convictions." This language eliminates the alleged significance of any difference between guilty and *nolo contendere* pleas, in the probation violation context, and we shall adhere to the Connecticut court's reasoning in this regard.

Thus, defendant has failed to distinguish the facts of this case from those in *Singleton*. Although we are not obligated to follow the Connecticut Supreme Court's precedent, we find the analysis set forth in *Singleton* quite compelling. Accordingly, we conclude that because defendant entered a *nolo contendere* plea to the very offense that defendant is disputing in his probation violation appeal, his appeal is moot.[3] It is apparent that there no longer exists a controversy about whether defendant committed the criminal conduct that gave rise to the probation violation.

## C
### Arbitrary and Capricious

We are further persuaded that defendant's probation violation judgment should stand because the hearing justice's determination that defendant violated the terms of his probation was neither arbitrary nor capricious. The state does not need to prove, beyond a reasonable doubt, that defendant committed the underlying offense. *Vieira*, 883 A.2d at 1148 (citing *Snell*, 861 A.2d at 1030–31; *Gautier*, 774 A.2d at 886–87). Rather, the hearing justice need be only reasonably satisfied by the evidence presented that defendant breached a condition of his probation by failing to keep the peace or remain in good behavior. *Id.*; *Summerour*, 850 A.2d at 951.

The defendant contends that the hearing justice acted arbitrarily and capriciously in finding a violation on the basis of the evidence presented. In assessing Sara's testimony, the hearing justice determined that when Sara was fifteen years old, defendant "told her to get in the back seat [of a car], which she did, and at that time she engaged in oral sex with him. * * * [H]e held her hand on his penis until he climaxed." As the hearing justice pointed out, the only issue in this case was whether there was sex, or sexual contact, between defendant and Sara.

The hearing justice determined that Sara was a credible witness.

"[T]he Court does find her to be credible. She was tiny, small, very small in

3. We note that although there may be other instances in which a subsequent plea of guilty or *nolo contendere* would survive a mootness analysis, such as, for example, an acquittal or the expiration of the defendant's probation, this case does not present us with one of those instances.

stature. She is physically challenged, obviously. As she put it, she suffered from arthritis. While she appears to be intelligent, in the sense that she is obviously a very shy person in that her answers were guarded, if you would, but that does not in any way effect her credibility as to what transpired; the fact is that there was sexual contact between [defendant] and Sara on September 1, 2006 when she was 15 years of age.

"* * *

"Also, her testimony was corroborated as to the fact that she was alone with [defendant] that evening by the testimony of Hayley Schultz, and, in fact, one can infer from that testimony, which the Court also finds credible, that [defendant] would not let Hayley get in the car with him and Sara to go back to Narragansett to pick up Terry Schultz."

It is not ordinarily the role of this Court to second-guess credibility assessments in a probation violation hearing. *Summerour*, 850 A.2d at 951. The present issue concerns a determination of credibility; thus we must ensure only that the hearing justice considered all the evidence and accepted one version of the events for a clearly rational reason. *Id.* at 951–52. Because we concur that the state's evidence was reasonably satisfactory to secure the revocation of the defendant's probation, we hold that the hearing justice acted neither arbitrarily nor capriciously.

### Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.