**STATE**

v.

**Gary GROMKIEWICZ.**

**No. 2011–90–C.A.**

Supreme Court of Rhode Island.

May 4, 2012.

46

Aaron L. Weisman, Department of Attorney General, for State.

Janice M. Weisfeld, Office of the Public Defender, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

**OPINION**

Justice GOLDBERG, for the Court.

This case came before the Supreme Court, sitting at William E. Tolman Senior High School in historic Pawtucket, Rhode Island, on April 11, 2012, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. The defendant, Gary Gromkiewicz (defendant or Gromkiewicz), appeals from an adjudication by a justice of the Superior Court, declaring him in violation of his probation. On appeal, the defendant argues that the trial justice erred by finding that the defendant had violated his probation by failing to keep the peace and remain on good behavior. Having carefully reviewed the memoranda submitted by the parties and the arguments of counsel, we are satisfied that cause has not been shown; thus, the appeal may be decided at this time. We affirm the judgment of the Superior Court.

## Facts and Travel

On April 19, 2005, defendant entered a plea of *nolo contendere* to one count of first-degree robbery and was sentenced to twenty years at the Adult Correctional Institutions, seven years to serve and thirteen years suspended, with probation. On June 4, 2009, defendant was found to have violated his probation and was sentenced to serve six months of his previously suspended sentence. On August 31, 2010, in accordance with Rule 32(f) of the Superior Court Rules of Criminal Procedure, the state filed a report alleging that defendant had again violated the terms of his probation, for yet another charge of robbery. Commencing on November 8, 2010, a Superior Court justice presided over a combined probation violation and bail hearing, the facts of which we glean from the record.

The complaining witness, Nicky Valiente (Valiente), testified that on August 30, 2010, he drove to a gas station on Union Avenue in Providence to meet Gromkiewicz, whom he had known since middle school. At the gas station, defendant got into Valiente's car and the pair drove a short distance to Dora Street, where they planned to smoke marijuana at the apartment of Gromkiewicz's friend. Valiente testified that once inside the building, they began to ascend the dimly lit stairs to a third-floor apartment when Valiente heard defendant, who was behind him, make a phone call and say that they "were coming up." Moments later, Valiente was grabbed by two men in the stairwell and led into an abandoned third-floor apartment, where he was forced to lie on the floor while one assailant held a gun to his head. Valiente testified that during the incident, one of the men held a knife and

that the three assailants passed the gun around between them. The three men emptied Valiente's pockets, taking his car keys, driver's license, cell phone, cell phone case, and approximately $300 in cash.[1]

Valiente stated that after his pockets had been emptied, he was allowed to stand up and that his car keys were returned to him. A few moments later, a commotion outside the house caused the men to become distracted, and Valiente ran out of the apartment. Valiente testified that defendant, who was in possession of the gun, chased Valiente while shouting, "I'll kill you if you snitch." According to Valiente, he was able to get to his car and drive a short distance before stopping to ask a pedestrian to report the incident to the police.

Gromkiewicz's girlfriend, Krista Brown (Brown), testified for the defense, stating that she was driven to the Dora Street address to pick up defendant because they were planning to look at an apartment to rent together as a couple. Brown stated that while parked on Dora Street waiting for defendant, she saw Valiente and defendant enter the Dora Street apartment building. Brown testified that approximately ten minutes later, defendant ran out of the building shouting, "[h]e has a gun, he has a gun," and that Valiente was in close pursuit. Brown testified that she and the friend who brought her there then drove away, abandoning defendant at the scene.

Two Providence police officers who responded to the Dora Street apartment building also testified at the hearing. Both officers stated that during their on-scene investigation, Valiente's empty cell

---

1. Valiente testified that during the incident defendant also transcribed Valiente's home address from his license onto a note pad so they could later rob his house, and they attempted to have Valiente sign a bill of sale transferring his vehicle to defendant.

phone case and driver's license were found in the abandoned third-floor apartment; photographs taken of those items were introduced into evidence. The officers also testified that during the investigation, they learned that Gromkiewicz was staying with a tenant who lived on the second floor of the building. After performing a cursory search of the second-floor apartment, police discovered defendant hiding in the building's basement. Valiente positively identified defendant outside of the apartment building, and police took defendant into custody and read him his *Miranda* rights. When asked whether he had any knowledge of the alleged robbery, defendant stated to police, "you got a job to do and I got to do what I got to do."

At the conclusion of the hearing, the trial justice noted that, although there were some minor inconsistencies in Valiente's testimony,[2] she found his testimony to be credible and she added that it was corroborated by other evidence. In contrast, the trial justice found Gromkiewicz's girlfriend biased and not credible, noting that, prior to Brown's testimony, there was no suggestion that defendant was the victim of a crime. After reviewing the testimony presented at the hearing, the trial justice found that she was reasonably satisfied that Gromkiewicz had failed to keep the peace and be of good behavior, thereby declaring him to be in violation of the terms and conditions of his probation. The defendant timely appealed.

## Standard of Review

"Keeping the peace and remaining on good behavior are conditions of probation," and the sole purpose of a pro-

bation violation hearing is for the trial justice to determine whether the conditions of probation have been violated. *State v. Waite*, 813 A.2d 982, 985 (R.I. 2003). "At a probation violation hearing, the state is only required to prove to the reasonable satisfaction of the hearing justice that the defendant has violated the terms and conditions of the previously imposed probation." *State v. Anderson*, 705 A.2d 996, 997 (R.I.1997) (mem.). "In reviewing an adjudication of violation of probation, only reasonably satisfactory evidence is required, not proof beyond a reasonable doubt as is required in a criminal trial." *State v. Pena*, 791 A.2d 484, 485 (R.I.2002) (mem.). The "reasonable satisfaction" standard should not be employed to determine the question of defendant's guilt in regard to any offense which may form the basis of the violation allegation, but should instead be applied to determine whether defendant maintained or violated the conditions of his probation. *Waite*, 813 A.2d at 985. This Court's review of a trial justice's decision in a probation violation proceeding is restricted to considering "whether the hearing justice acted arbitrarily or capriciously in finding a violation." *State v. Seamans*, 935 A.2d 618, 621 (R.I.2007) (quoting *State v. Vieira*, 883 A.2d 1146, 1148 (R.I.2005)).

## Analysis

On appeal, defendant avers that the evidence presented at his violation hearing was insufficient to meet the reasonable satisfaction standard, and that the trial justice's decision was arbitrary and capricious. The defendant primarily relies on

---

**2.** The defendant pointed out several inconsistencies in Valiente's testimony pertaining to the alleged robbery, including: (1) Valiente testified that he met defendant at the gas station around 7 p.m., whereas the police report indicated that the police were called

and responded to the scene at approximately 9:55 p.m.; (2) Valiente testified that an amount between $300 and $375 in cash was taken from him, although Valiente told responding officers that defendant took $400 in cash from him.

the assertion that the trial justice erred in finding the complaining witness's testimony more credible than the witnesses presented by the defense. As this Court previously has stated, "[a]ssessing the credibility of a witness in a probation violation hearing is a function of the hearing justice, not this Court." *Waite*, 813 A.2d at 985. Moreover,

> "When a probation-violation inquiry turns on a determination of credibility, * * * and the hearing justice, after considering all the evidence, accepts one version of events for plausible reasons stated and rationally rejects another version, we can safely conclude that the hearing justice did not act unreasonably or arbitrarily in finding that a probation violation has occurred." *State v. Sylvia*, 871 A.2d 954, 957 (R.I.2005) (quoting *State v. Rioux*, 708 A.2d 895, 898 (R.I. 1998)).

 The record reflects that the trial justice carefully weighed the evidence presented and acted well within her discretion when she assessed the credibility of the testifying witnesses. The trial justice found the testimony of the complaining witness to be candid, credible, and corroborated by other evidence, notwithstanding some disparities. Conversely, the trial justice found the testimony of Gromkiewicz's girlfriend to be biased, particularly because her testimony was the only evidence presented suggesting that the defendant was the victim. The trial justice further discounted Brown's portrayal of events, given her testimony that she drove off while her boyfriend—the man with whom she was going to live—allegedly was being chased by a man with a gun. Finally, the trial justice did not exceed the bounds of her discretion when she considered the defendant's statement to police, "you got a job to do and I got to do what I got to do," as evidence suggestive of his guilty involvement and his motive to hide in the basement. Accordingly, we are of the opinion that the trial justice did not act arbitrarily or capriciously in finding that the defendant violated the terms of his probation.

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The papers in this case may be returned to the Superior Court.