Issued February 5, 2019

Corrected February 5, 2019

**Supreme Court**

No. 2017-215-M.P.
(P2/06-1662A)

No. 2017-216-M.P.
(P1/06-2054A)

|  |  |
|---|---|
| State | : |
| v. | : |
| Michael D'Amico. | : |

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

|  |  |
|---|---|
| State | : |
| v. | : |
| Michael D'Amico. | : |

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Flaherty, for the Court.** This case is before the Court pursuant to writs of certiorari. On June 19, 2007, the defendant, Michael D'Amico, pled nolo contendere to charges brought in P1-2006-2054A and P2-2006-1662A, which included two counts of first degree robbery, one count of conspiracy, and three counts of felony assault. He was sentenced to ten years to serve for the conspiracy charge and twenty years for each robbery and assault charge, with ten years to serve and the balance suspended, with probation. All sentences were to run concurrently.[1] D'Amico now seeks review of two Superior Court judgments, entered in 2012, adjudging him to be a violator of his probation. This case came before the Supreme Court for oral argument on November 27, 2018, pursuant to an order directing the parties to appear and show cause why the issues raised should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed on behalf of the parties, we conclude that cause

---

[1] It appears from the record that D'Amico was released from prison in September 2011, although the basis for his release, whether on parole or at the expiration of his sentence, remains unclear.

- 1 -

has not been shown and that this case may be decided without further briefing or argument.  For the reasons set forth in this opinion, we affirm the judgments of the Superior Court.

## I

## Facts and Travel

Around 11:30 on the morning of November 23, 2011, Khurshid Siddiq and Edwin Cowgen were enjoying a smoke break outside a 7-Eleven convenience store on Charles Street in Providence.  Siddiq, the franchisee and manager of the store, and Cowgen, a 7-Eleven "field consultant," noticed a man wearing sweatpants and a hooded sweatshirt enter the 7-Eleven and grab a drink from the cooler.  The man's hood was pulled tightly about his face, leaving only the area between his eyebrows and upper lip visible.  Siddiq later testified that, despite the man's garb, he could see that the man had a "light moustache" and "sunken eyes."  Siddiq testified that, from inside the store, the man pointed at them and gestured for them to come inside. They did so, believing that the man was a customer.  To their chagrin, however, the hooded man was not in the store to make a purchase, and he soon proclaimed his intentions with the blunt, straightforward announcement: "This is a robbery."

Cowgen immediately stepped aside and told the robber that he was not an employee of the establishment.  The man displayed what Siddiq and Cowgen both believed to be a handgun and demanded all the cash in the register, roughly $400, as well as some cigars and cigarettes.  During the encounter, a customer approached the counter to make a purchase, but was rebuffed by the hooded character, who, according to Cowgen, told the customer, "turn the f around or I'll rob you old man."  All told, the robbery lasted between two and four minutes, and it was recorded in its entirety from several angles by the store's surveillance cameras.

Eventually, the cowled figure concluded the heist, and Siddiq watched him on a video camera as he walked away from the store. As soon as the robber left the premises, Cowgen "hit the panic button" to call the police. When the police arrived, Cowgen and Siddiq provided statements to the responding officers, and Cowgen gave police a basic description of the culprit.

The Providence police officers circulated an email throughout the department containing a photograph of the unknown robber, that had been harvested from surveillance video at the 7-Eleven. After two officers suggested that the hooded figure in the photograph might be D'Amico, police responded to his residence, which was, coincidentally, but a short distance from the crime scene.

In January 2012, the state filed a Rule 32(f) violation report in the Superior Court, alleging that D'Amico had violated the terms and conditions of his probation in the two underlying criminal cases by robbing the 7-Eleven convenience store two months earlier.[2] A two-day violation hearing was held in May 2012, at which both Siddiq and Cowgen testified for the state. Also, D'Amico presented testimony by a Providence police detective who investigated the robbery.

Siddiq testified that, sometime after the robbery occurred, Providence police showed him a photographic array consisting of pictures of six different individuals. A photograph of D'Amico was included in the array. Siddiq said that, after he examined the photographs one by one, he circled the photograph of D'Amico, signed his name, and wrote "This is the guy who has robbed us." He also testified that he had seen the hooded man in the store on one or two prior occasions. Siddiq also identified D'Amico, from the witness stand, as the man who had held up the store. When pressed to explain the level of confidence he had in his identification, he

---

[2] A separate criminal complaint filed against D'Amico relating to the November 23, 2011 robbery was later dismissed.

testified that, although he was not one hundred percent sure, "one cannot be a hundred percent sure of anything"; but he also said that there was no doubt in his mind that D'Amico was the person who had robbed the 7-Eleven.

When Cowgen took the stand, he testified that, when police asked him to pick the robber out of a photo array, he remembered identifying one of the individuals in the array who he believed closely resembled the 7-Eleven robber, but that his identification had not been positive or conclusive because "they did have a hoody on, it was scrunched up pretty tight." When pressed on cross-examination, Cowgen was unable to determine which photograph in the array he had previously identified for police as possibly being the assailant. When asked whether Cowgen recognized D'Amico as he appeared in the courtroom, Cowgen testified that he did not. According to Cowgen, 7-Eleven employees are instructed that "you're not suppose[d] to look into a robber's eyes because that's an indication that you're being confrontational."

The state also introduced several exhibits for the hearing justice's consideration, including the six-photograph array presented to Siddiq, video surveillance that captured the robbery as it happened, and two still photographs taken from video surveillance recordings—one of the hooded robber's body and face in profile and another of his partially obscured facial features as he faced the camera.

The hearing justice credited Siddiq's identification and further opined that the photograph of the robber's face was a "dead ringer" for D'Amico. He concluded: "I have no question in my mind that the [s]tate has proved its case that Mr. D'Amico has clearly violated his terms and conditions of his suspended/probationary sentence[.]" Accordingly, the hearing justice removed the suspended portion of the sentences previously imposed for D'Amico's 2007 conspiracy,

- 4 -

assault, and robbery convictions, and ordered that he serve ten years' incarceration on the previously imposed concurrent sentences.

D'Amico did not appeal from the resulting judgments of conviction and commitment. Five years later, however, D'Amico filed petitions for the issuance of writs of certiorari with this Court, claiming that his attorney had failed to inform him that he had a right to appeal the violation hearing. We granted certiorari on September 11, 2017, and ordered that the certiorari petitions be consolidated on October 27, 2017.

## II

### Standard of Review

"'Keeping the peace and remaining on good behavior are conditions of probation,' and the sole purpose of a probation violation hearing is for the [hearing] justice to determine whether the conditions of probation have been violated." *State v. Gromkiewicz*, 43 A.3d 45, 48 (R.I. 2012) (quoting *State v. Waite*, 813 A.2d 982, 985 (R.I. 2003)). "In determining whether or not a defendant has committed a probation violation, the hearing justice is charged with weighing the evidence and assessing the credibility of the witnesses." *State v. Tetreault*, 973 A.2d 489, 492 (R.I. 2009) (quoting *State v. Christodal*, 946 A.2d 811, 816 (R.I. 2008)); *see State v. Jackson*, 966 A.2d 1225, 1229 (R.I. 2009). We afford great deference to the hearing justice's adjudication of a probation violation, and our review of such an adjudication "is restricted to considering 'whether the hearing justice acted arbitrarily or capriciously in finding a violation.'" *Gromkiewicz*, 43 A.3d at 48 (quoting *State v. Seamans*, 935 A.2d 618, 621 (R.I. 2007)). "Challenges to a trial justice's credibility determinations typically are unavailing in this Court because the assessment of witness credibility 'in a probation violation hearing is a function of the

- 5 -

[trial] justice, not this Court.'" *State v. Gibson*, 126 A.3d 427, 431 (R.I. 2015) (alteration in original) (quoting *Gromkiewicz*, 43 A.3d at 49); *see Waite*, 813 A.2d at 985.

At the time of the violation hearing in this case, the state had only to "prove to the reasonable satisfaction of the hearing justice that the defendant [had] violated the terms and conditions of the previously imposed probation." *State v. Hazard*, 68 A.3d 479, 499 (R.I. 2013) (quoting *Gromkiewicz*, 43 A.3d at 48). Significantly, a 2016 amendment to Rule 32(f) of the Superior Court Rules of Criminal Procedure increased the state's burden of proof such that it must now establish "by a fair preponderance of the evidence that the defendant breached a condition of the defendant's probation or deferred sentence or failed to keep the peace or remain on good behavior." Super. R. Crim. P. 32(f). However, even with that change, the state's burden of proof in a probation violation hearing remains "far less exacting" than that required for a conviction in a criminal trial. *Gibson*, 126 A.3d at 431.

## III

## Discussion

Before this Court, D'Amico argues that the hearing justice ascribed undeserved evidentiary weight to the photograph of the robber and to Siddiq's testimony and, in doing so, acted arbitrarily and capriciously in finding that D'Amico had violated the conditions of his probation. Alternatively, he argues that his case should be remanded to the Superior Court for a new probation violation hearing in accordance with the June 21, 2016 amendment to Rule 32(f) of the Superior Court Rules of Criminal Procedure. Because the proper standard for determining whether a violation has occurred is a threshold matter, we discuss D'Amico's alternative argument first.

# A

## Rule 32(f)

D'Amico's probation violation hearing took place in May 2012. At that time, Rule 32(f) required only that the state "prove to the reasonable satisfaction of the hearing justice" that D'Amico had violated the terms and conditions of his probation. *Hazard*, 68 A.3d at 499. That rule was amended a full four years later to require a higher burden of proof. *In re Amendments to Superior Court Rules of Criminal Procedure and Sentencing Benchmarks*, at 1 (R.I., filed June 16, 2016) (mem.). In accordance with that amendment, the state is now required to establish "by a fair preponderance of the evidence" that a probationer has violated the terms and conditions of his probation. Super. R. Crim. P. 32(f). D'Amico argues that his case should be remanded for a new probation violation hearing under the new standard because, he avers, his "violation appeal was still pending" at the time the amendment was enacted "because it had not been properly made[,]" and, therefore, "[t]he judgment below was, and still is, not final."

We do not agree. It is true that "[t]ypically, when a new rule of criminal procedure is announced during the pendency of a defendant's direct appeal, the defendant will benefit from a retroactive application of that rule." *State v. Pona*, 926 A.2d 592, 605 (R.I. 2007). The judgments in this case, however, were not pending direct review when Rule 32(f) was amended—not "because it had not been properly made" as D'Amico claims, but rather because the judgments had not been appealed at all. It is here that we diverge from D'Amico's argument; in our opinion, the judgments were final.

Judgment in these cases was entered on May 22, 2012. From that date, D'Amico had twenty days to file an appeal under Article I, Rule 4 of the Supreme Court Rules of Appellate Procedure, but he did not do so. As a result of his failure to take a timely appeal, the judgments

- 7 -

became final. *See Marcello v. Neves*, 912 A.2d 420, 420 (R.I. 2006) (mem.); *Bilotti v. LaSalle*, 506 A.2d 1362, 1365 (R.I. 1986). The judgments were final in 2016 when Rule 32(f) was amended, and they remain final today.[3] This Court's grant of certiorari to review the judgments did not act in any way to transmute the judgments from final to "pending appeal," because there was no appeal. A writ of certiorari is a matter of judicial grace and cannot be used as an end-run around a final judgment for the purpose of exploiting favorable changes to the Rules of Criminal Procedure made years after that judgment was entered.[4]

## B

### Sufficiency of the Evidence

D'Amico argues that the evidence presented at his probation violation hearing was insufficient to support the hearing justice's conclusion that D'Amico had breached the terms and conditions of his probation and, as such, the hearing justice acted arbitrarily and capriciously when he found that he had violated the terms of his probation. After closely examining the record in this case, we can discern no error by the hearing justice.

The evidence in this case was more than enough to "prove to the reasonable satisfaction of the hearing justice that the defendant [had] violated the terms and conditions of the previously imposed probation." *Hazard*, 68 A.3d at 499 (quoting *Gromkiewicz*, 43 A.3d at 48). Siddiq testified that a distance of only three feet separated him from the hooded figure during the

---

[3] We are mindful of D'Amico's claim that his failure to timely appeal could be attributed to his attorney's failure to inform him of his right to appeal. Indeed, it was this claim that formed the basis of his petitions for certiorari. Nevertheless, whether or not D'Amico's failure to take a timely appeal was a consequence of his attorney's advice, or lack thereof, the judgments "became final upon expiration of the period allowed for appeals[.]" *Marcello v. Neves*, 912 A.2d 420, 420 (R.I. 2006) (mem.).

[4] Further, the committee notes for the 2016 amendment to Rule 32(f) of the Superior Court Rules of Criminal Procedure make it clear that the heightened burden of proof was intended to be applied prospectively only. *See* Committee Notes for 2016 Amendment to Rule 32(f).

robbery and that, of the two to four minutes during which the encounter took place, Siddiq was able to observe the man for roughly thirty seconds. His vantage point and the amount of time that elapsed during the encounter provided ample opportunity for Siddiq to identify his assailant when he later viewed the photo array. Moreover, the state presented photographs of the suspect—both in profile and looking toward the camera—to the hearing justice, who had the benefit of studying the photographs after having heard and observed Siddiq testify.

D'Amico makes much of the stressful nature of the robbery, that the robber was wearing a hood that obscured a significant portion of his face, the fact that Cowgen was unable to identify D'Amico in the photo array or at the violation hearing, that 7-Eleven employees are trained to avoid eye contact with those holding up stores, and that the photographs presented to the hearing justice were of less than pristine quality. Nevertheless, "[i]t is the duty of the hearing justice to weigh the relevant, material evidence and assess the credibility of the witnesses." *Jackson*, 966 A.2d at 1229. In this case, the hearing justice heard the testimony of Siddiq and Cowgen and compared pictures of the robber to D'Amico's visage as he appeared in the courtroom. It was the hearing justice's confident opinion that the individual depicted in the photographs before him, despite their grainy quality, was a "dead ringer" for D'Amico, and he chose to credit Siddiq's identification of D'Amico over Cowgen's failure to make an identification.

It is not a function of this Court to "second-guess" the supportable credibility assessment of the hearing justice at a probation violation hearing. *Jackson*, 966 A.2d at 1229. The deference we afford to the hearing justice is not simply theoretical, but "is premised upon our realization that we lack 'the same vantage point as the presiding judge, and we are unable to assess the witness[es]' demeanor, tone of voice, and body language.'" *State v. Washington*, 42 A.3d 1265, 1271 (R.I. 2012) (quoting *State v. Jenson*, 40 A.3d 771, 780 (R.I. 2012)).

The finding of the hearing justice in this case was supported by surveillance video, photographs, and the identification by a witness who stood but three feet from the robber throughout the robbery. Accordingly, we conclude that the hearing justice did not act arbitrarily or capriciously in finding that D'Amico violated the terms of his probation.[5]

## IV

## Conclusion

For the foregoing reasons, we affirm the judgments of the Superior Court, and the papers in these cases shall be returned to that court.

---

[5] We note that our conclusion today would be no different had we applied the "fair preponderance of the evidence" standard of amended Rule 32(f). The hearing justice made it very clear that he was more than satisfied that the 7-Eleven robber was in fact D'Amico, saying, "I have no question in my mind that the [s]tate has proved its case that Mr. D'Amico has clearly violated his terms and conditions of his suspended/probationary sentence[.]"

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Michael D'Amico. |
| **Case Number** | No. 2017-215-M.P. (P2/06-1662A)<br><br>No. 2017-216-M.P. (P1/06-2054A) |
| **Date Opinion Filed** | February 5, 2019 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia JJ. |
| **Written By** | Associate Justice Francis X. Flaherty |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Robert D. Krause |
| **Attorney(s) on Appeal** | For State:<br><br>Christopher R. Bush<br>Department of the Attorney General |
| | For Defendant:<br><br>Lara Montecalvo<br>Office of the Public Defender |