May 25, 2023

**Supreme Court**

No. 2021-104-C.A.
(P2/12-3024A)

State                              :

        v.                          :

James R. Perkins.              :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email: opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

| | |
|---|---|
| State | : |
| v. | : |
| James R. Perkins. | : |

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Goldberg, for the Court.** This case came before the Supreme Court on March 1, 2023, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. The defendant, James R. Perkins, appeals from an adjudication by a justice of the Superior Court declaring him to be in violation of the terms and conditions of his probation. On appeal, the defendant claims that (1) there was insufficient evidence presented to support a finding that he had violated his probation, and (2) in the alternative, even if sufficient evidence was presented to declare him a violator, the trial justice nevertheless erred by imposing an excessive sentence for the violation. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons stated herein, we affirm the judgment

- 1 -

of the Superior Court.

## Facts and Travel

In 2014, following a jury trial, defendant was convicted of conspiracy to violate the Rhode Island Uniform Controlled Substances Act in violation of G.L. 1956 § 21-28-4.08 (count two) and sentenced to five years at the Adult Correctional Institutions, eighteen months to serve, the balance—forty-two months—suspended, with probation.[1] The defendant also was adjudicated a habitual offender pursuant to G.L. 1956 § 12-19-21 and, accordingly, was sentenced to five years, one year to serve, the remainder—forty-eight months—suspended, with probation, consecutive to the sentence on the conspiracy count.[2]

On October 2, 2020, the state filed a notice of probation violation in accordance with Rule 32(f) of the Superior Court Rules of Criminal Procedure alleging that defendant had "fail[ed] to comply with a specific condition of [his] probation," namely, "fail[ing] to keep the peace and be of good behavior." The notice provided that the violation was "not contingent upon any specific criminal

---

[1] The trial justice ordered that defendant's sentences in this case run consecutive to defendant's previous sentence in P2/10-3853AG, which expired on May 19, 2017.

[2] On June 28, 2019, defendant was deemed to be a probation violator in an unrelated matter. The trial justice ordered defendant to serve four months of his suspended sentence as to both counts two and three, with thirty-eight months suspended as to count two and forty-four months suspended as to count three, to run consecutive to each other, for a total of eight months to serve on the probation violation and eighty-two months remaining suspended.

offense" but rather was summarized in attached reports from the Providence Police Department and the Rhode Island State Police.

A violation hearing was held on January 7, 2021, and February 2, 2021, during which the state presented three separate grounds in support of its claim. First, the state maintained that defendant had possessed narcotics for distribution. Next, the state contended that defendant had resisted arrest. Finally, the state argued that defendant had assaulted his former girlfriend by holding a firearm to her head, threatening to kill her, and breaking the windshield of her car.

On February 8, 2021, the trial justice issued a bench decision finding that defendant had violated the terms and conditions of his probation. The trial justice found that the state had failed to prove by a preponderance of the evidence that defendant had possessed narcotics for distribution or that he assaulted his former girlfriend, but that the state had met its burden in proving that defendant had resisted arrest and affirming the circumstances that led to the Rule 32(f) notice. The trial justice executed thirty-six months of his suspended sentence.[3] This appeal

---

[3] During sentencing, there was some debate as to the maximum period of incarceration defendant was facing. The trial justice ordered defendant to serve thirty-six months. However, on April 26, 2021, during a subsequent violation hearing, the parties agreed that at the time of the February 8, 2021 violation hearing, defendant was facing a sentence of thirty-eight months for his conviction on count two and a consecutive term of forty-four months on count three. Thus, the parties agreed, that on February 8, 2021, the trial justice ordered defendant to serve thirty-six months of his suspended sentence on count two with the remaining months suspended. As to count three, the parties agreed that forty-four months remained

followed.[4]

## Standard of Review

"'Keeping the peace and remaining on good behavior are conditions of probation,' and the sole purpose of a probation violation hearing is for the trial justice to determine whether the conditions of probation have been violated." *State v. Gromkiewicz*, 43 A.3d 45, 48 (R.I. 2012) (quoting *State v. Waite*, 813 A.2d 982, 985 (R.I. 2003)). "To establish a probation violation, the state must demonstrate 'by a fair preponderance of the evidence that the defendant breached a condition of the defendant's probation[.]'" *State v. Regan*, 273 A.3d 116, 118-19 (R.I. 2022) (quoting Super. R. Crim. P. 32(f)). "We review a [trial] justice's adjudication of probation violation deferentially, reversing only where the [trial] justice acted arbitrarily or capriciously in finding a violation." *State v. Brown*, 140 A.3d 768, 780 (R.I. 2016) (quoting *State v. Gibson*, 126 A.3d 427, 431 (R.I. 2015)).

"Finally, with respect to a trial justice's decision to execute all or a portion of a defendant's previously suspended sentence after a finding of probation violation,

suspended, and consecutive to count two.

[4] While the case was on appeal before this Court, defendant filed a motion to quash his sentence and terminate imprisonment based on the dismissal of all the underlying criminal charges from the incidents that gave rise to his violation. The case was remanded to the Superior Court and a hearing on defendant's motion was held. The trial justice entered an order denying defendant's motion and the case was certified again to this Court.

'[t]he [trial justice] has wide discretion when determining the proper sentence to exact upon a probation violator,' and we will uphold that decision unless it constitutes an abuse of that discretion." *State v. Roberts*, 59 A.3d 693, 697 (R.I. 2013) (quoting *State v. Lancellotta*, 35 A.3d 863, 869 (R.I. 2012)).

**Analysis**

We begin by addressing defendant's claim that there was insufficient evidence presented to support a finding that he had violated his probation by resisting arrest. The defendant contends that the trial justice's conclusion that he resisted arrest was "unsupported by the evidence." We disagree.

At the probation violation hearing, numerous members of law enforcement testified that defendant had resisted arrest on September 30, 2020. In addition, at the time, defendant was wanted on an outstanding warrant for firearms violations. Providence Police Detective Thomas J. Zincone, Jr., a member of the High-Intensity Drug Trafficking Area (HIDTA) task force,[5] received information from a confidential informant that defendant was at a residence in the area of Pumgansett Street in Providence and may have been in possession of a firearm and narcotics. According to the confidential informant, defendant was carrying a red and black

---

[5] The HIDTA task force is composed of law enforcement officers from various police departments throughout the state, including the Rhode Island State Police.

- 5 -

backpack. Armed with this information, a team of HIDTA detectives began surveilling the area on September 30, 2020.

Around 9:00 p.m., an individual matching defendant's description emerged from the side entrance of a house on Pumgansett Street; however, in the darkness of the night, the detectives could not immediately discern whether it was in fact defendant. The individual was wearing a protective mask and his gray hoodie was tight around his face, but he did not have a backpack. The detectives followed him in an unmarked police car as he walked to a nearby convenience store. While the individual was in the store, the detectives requested backup of additional detectives, who surrounded the convenience store. There were between five and eight members of the HIDTA task force surrounding the store, waiting for the individual to exit so they could properly identify him. The individual exited the store where Det. Zincone and Det. Conor O'Donnell were waiting.[6] Detective Zincone asked the individual to lower his mask in order to confirm his identity, and the individual complied; it was defendant.

According to Det. Zincone, although he could not remember if he identified himself as a police officer, when he approached him, defendant said, "What's going

---

[6] During the violation hearing, counsel for defendant elicited testimony from Det. Zincone that he was previously a member of a police crew in Providence colloquially referred to as the "Jump Out Boys" due to their practice of surprising individuals and then quickly arresting them.

on, Crater?"—"Crater" being Det. Zincone's street name, making it clear to Det. Zincone that defendant recognized him. Detective Zincone averred that he had interactions with defendant in the past, and further testified that his badge was displayed at his waist. Detective Zincone explained how, after exiting the store and acknowledging him, defendant "tried to push through [Det. Zincone] to escape apprehension," such that Det. Zincone "grabbed ahold of [defendant's] arm, shoulder area, and [he] forced [defendant] to the ground." The defendant "continued to * * * elbow and push his way through [Det. Zincone] and [his] partners even while in [a] prone position on the ground. One of the other detectives had to * * * administer his stun gun to get [defendant] to comply, [and] put [defendant's] hands behind his back to be handcuffed." According to Det. Zincone, during the struggle, defendant elbowed him in the chest. Detective Zincone and other officers were struck by a stun gun that was deployed. The scuffle was over in about a minute and defendant ultimately was placed in handcuffs.

Detective O'Donnell of the Rhode Island State Police also was assigned to the HIDTA task force at the time of defendant's arrest and testified that defendant had resisted arrest. According to Det. O'Donnell, after observing defendant enter the convenience store, five or six officers surrounded the store. Detective O'Donnell and Det. Zincone "tried to sneak up to the doorway" of the store and hide from defendant's view. Detective O'Donnell testified that the detectives were fearful that

defendant might flee if he caught sight of them, although, they were in plain clothes. The defendant exited the store, and Det. Zincone stepped in front of him, while Det. O'Donnell came from behind and to defendant's side. According to Det. O'Donnell, they identified themselves as police officers and a conversation ensued between Det. Zincone and defendant; it was clear from their conversation that they knew each other. When the detectives then attempted to arrest defendant, an altercation ensued. Detective O'Donnell testified that he "grabbed ahold of one of [defendant's] hands" and defendant "began to actively resist, violently resist, ended up to the point where * * * Detective Zincone * * * partially had control of one side of his body." Detective O'Donnell explained that, when he tried to grab defendant's hand and put it behind his back, defendant "pulled away" and "tried to flee essentially." Detective O'Donnell testified that defendant "reached towards the back of his waistband" and believing defendant might be armed, Det. O'Donnell hit him "behind the solar plexus" to prevent him from pulling out a gun. The defendant was taken to the ground and arrested; the skirmish lasted less than a minute.

Sergeant Derek Melfi of the Rhode Island State Police, a member of the HIDTA task force, also participated in the apprehension of defendant and testified that defendant had resisted arrest. According to Sgt. Melfi, he received information that an individual matching Perkins's description was heading towards a convenience store. Sergeant Melfi testified that he was either the fifth or sixth officer

to arrive at the store, at which point he saw Detectives Zincone and O'Donnell waiting near the main entrance for defendant to exit. Sergeant Melfi drove around to the side of the building and parked his vehicle. From his vantage point, the side of the building obstructed his view of the other detectives and the entrance to the store. Sergeant Melfi testified that by the time he made his way to the front of the building, Det. Zincone and Det. O'Donnell were already struggling with defendant. Sergeant Melfi averred that he saw defendant on the ground and the detectives struggling to get defendant's arms behind his back. To him, "it was obvious that [defendant] was visibly resisting arrest." Sergeant Melfi estimated that the struggle that he observed lasted approximately ten to fifteen seconds before defendant was handcuffed. After defendant was restrained, Sgt. Melfi assisted defendant off the ground and began to escort him to a police cruiser. The defendant persisted in resisting arrest. According to Sgt. Melfi, defendant "had his whole body * * * extremely tense. He was pulling away from me as I was trying to walk him toward the car. He was screaming expletives. * * * He was pulling away from me, wasn't allowing just a ca[su]al walk to the cruiser. He was resisting that walk."

After defendant was handcuffed, he was searched by Det. Zincone. No firearms or narcotics were found on his person. The defendant was taken into custody and Det. Zincone and Det. O'Donnell responded back to 20-22 Pumgansett Street—the house from which defendant exited prior to walking to the convenience

- 9 -

store—in an attempt to "locate the firearm in question." The house had three floors with both a front and side entrance. The detectives entered the side door, which Det. Zincone averred "was actually wide open." As the detectives walked into the hallway, they encountered a woman, and based on the conversation with her, they made their way up to the third floor. On the third floor, they spoke with another woman, defendant's former girlfriend, Jacqueline Lopez, who consented to the search of the apartment. The detectives were looking for the red and black backpack that the confidential informant had claimed to have seen with defendant. They seized the backpack found on the floor of a bedroom. Inside the backpack were an expired identification card belonging to defendant and narcotics.

Although the trial justice found that the state had failed to prove by a preponderance of the evidence that defendant had possessed narcotics for distribution, he concluded that the state had met its burden in proving that defendant had resisted arrest.[7] The trial justice explained that, based on the evidence presented,

---

[7] We pause to note that the man observed leaving the residence on Pumgansett Street was neither identified as defendant by the officers nor was he in possession of a red and black backpack. These factors, coupled with the questionable circumstances of the warrantless seizure of the backpack, and the failure of defendant's former girlfriend to testify at the violation hearing, would likely have resulted in defendant not having been deemed a violator in the present case were it not for his violent resistance to arrest. Simply put, however, there is no right to resist arrest, even an unlawful arrest, particularly when one is on probation. *See State v. Small*, 122 R.I. 634, 637, 410 A.2d 1336, 1338 (1980) ("It is the rule in Rhode Island that even if an arrest is unlawful * * * the arrest may not be resisted forcibly.").

- 10 -

he was "satisfied that during the struggle and then [while] escorting [him] to the cruiser, the [d]efendant did in fact resist arrest" and that therefore the "[s]tate ha[d] met its burden that [d]efendant failed to keep the peace and be of good behavior * * *." Based on the foregoing evidence, we reject defendant's contention that the trial justice's conclusion that he resisted arrest was "unsupported by the evidence." The testimony presented established that defendant pushed through Det. Zincone, instigating the physical interaction that then ensued. The defendant was eventually placed in handcuffs and directed towards a police cruiser. Testimony was presented that defendant again resisted arrest on the way to the cruiser. Thus, we conclude that the evidence clearly supported the trial justice's conclusion that defendant resisted arrest while he was on probation.

To the extent that defendant contends that the officers' testimony was not credible, we note that credibility determinations in a probation violation hearing are exclusively within the purview of the trial justice. *See Gibson*, 126 A.3d at 431 ("Challenges to a trial justice's credibility determinations typically are unavailing in this Court because the assessment of witness credibility 'in a probation violation hearing is a function of the [trial] justice, not this Court.'") (quoting *State v. Hazard*, 68 A.3d 479, 499 (R.I. 2013)). The trial justice found the officers' testimony credible, noting that they "all testified as to a violent struggle." We decline to disturb this conclusion.

- 11 -

We also decline to disturb the trial justice's determination that the testimony of defense witness Tonia Pona was not credible. Ms. Pona testified that she grew up in the same neighborhood as defendant and was acquainted with him for over ten years. Ms. Pona testified that, on the day of defendant's arrest, she and defendant went to dinner at his mother's house. Then, according to Pona, she drove defendant to a liquor store where she dropped him off before heading to a gas station. Ms. Pona testified that, while she was at the gas station, defendant texted her and told her he was at a convenience store. Ms. Pona averred that she drove to the convenience store where she saw "a whole bunch of people running" who were dressed in plain clothes. She testified that she did not realize they were police officers. According to Pona, the officers "threw [defendant] on the ground." Ms. Pona testified that she did not see defendant struggle or resist arrest.

The trial justice explained that he did not find Pona credible because, when asked by the state if she had a relationship with defendant, she responded, "[W]hy is that important?" The trial justice credited the officers' testimony that they saw defendant exit a house on Pumgansett Street over Pona's conflicting testimony that she drove defendant to a liquor store from which defendant walked to the convenience store. *See Gromkiewicz*, 43 A.3d at 49 ("When a probation-violation inquiry turns on a determination of credibility, * * * and the hearing justice, after considering all the evidence, accepts one version of events for plausible reasons

- 12 -

stated and rationally rejects another version, we can safely conclude that the hearing justice did not act unreasonably or arbitrarily in finding that a probation violation has occurred.") (quoting *State v. Sylvia*, 871 A.2d 954, 957 (R.I. 2005)). We therefore conclude that the trial justice did not err in rejecting Pona's testimony.

The trial justice properly "weigh[ed] the evidence and assesse[d] the credibility of the witnesses." *State v. English*, 21 A.3d 403, 407 (R.I. 2011) (quoting *State v. Pena*, 791 A.2d 484, 485 (R.I. 2002)). We are therefore of the opinion that the trial justice did not act arbitrarily or capriciously in concluding that defendant had violated his probation. *See Brown*, 140 A.3d at 780 ("We review a [trial] justice's adjudication of probation violation deferentially, reversing only where the [trial] justice acted arbitrarily or capriciously in finding a violation.") (quoting *Gibson*, 126 A.3d at 431).

We next address defendant's claim that the trial justice imposed an excessive sentence for this probation violation. "It is well established that 'the unexecuted portion of a probationer's suspended sentence hangs over his or her head by the single horsehair of good behavior, until such time as the term of probation expires.'" *State v. Molina*, 251 A.3d 485, 494 (R.I. 2021) (quoting *State v. Parson*, 844 A.2d 178, 180 (R.I. 2004)). Having declared a probationer to be in violation of the terms and conditions of probation, the trial justice does not impose sentence. Rather, the trial justice "may remove the suspension and order the defendant committed on the

- 13 -

sentence previously imposed, or on a lesser sentence, or impose a sentence if one has not been previously imposed, or may continue the suspension of a sentence previously imposed, as to the court may seem just and proper." *Brown*, 140 A.3d at 785 (quoting G.L. 1956 § 12-19-9). "A trial justice is afforded substantial discretion in deciding whether 'to execute all or a portion of a defendant's previously suspended sentence after a finding of probation violation.'" *Id.* (quoting *Roberts*, 59 A.3d at 697). "[W]e will uphold that decision unless it constitutes an abuse of that discretion." *Roberts*, 59 A.3d at 697.

In the case at hand, defendant contends that the trial justice abused his discretion in sentencing him to thirty-six months of his suspended sentences, two months to remain suspended, because "his momentary reaction to an explosive arrest" was not "so egregious to revoke his liberty for twice as long as [a] pre-hearing offer of eighteen months to serve." Clearly, in determining the appropriate sentence in the face of this testimony, the trial justice appropriately refused to consider the terms of any previously rejected offer; rather, the trial justice was vested with "substantial discretion in deciding whether 'to execute all or a portion of a defendant's previously suspended sentence * * *.'" *See Brown*, 140 A.3d at 785 (quoting *Roberts*, 59 A.3d at 697). Furthermore, although the trial justice concluded that defendant had violated his probation by resisting arrest, the trial justice explained that he was not basing defendant's sentence solely on this conduct. *See id.*

- 14 -

("When a [trial] justice is deciding how much of a previously suspended sentence to execute, his or her primary focus should be on the nature of the first offense. * * * The circumstances of the second offense, however, may also be taken into account.") (quoting *State v. McKinnon-Conneally*, 101 A.3d 875, 879 (R.I. 2014)).

As he was free to do, the trial justice based his sentencing decision on several factors, including the defendant's extensive criminal record, for which he was previously declared to be a habitual offender. *See Neufville v. State*, 172 A.3d 161, 168 (R.I. 2017). The trial justice explained that he was "struck" by the fact that the defendant had violated probation in various cases on twenty-two previous occasions and had served approximately a decade in prison. This criminal record, the trial justice noted, included multiple convictions for resisting arrest.[8] Based on the defendant's extensive criminal record and numerous probation violations, the trial justice also concluded that the defendant was unlikely to rehabilitate. *See State v. Simpson*, 174 A.3d 1238, 1244 (R.I. 2018) ("We have often stated that rehabilitation is a 'factor to be considered in sentencing.'") (quoting *State v. Fairweather*, 138 A.3d 822, 829 (R.I. 2016)). We are of the opinion that the trial justice acted well

---

[8] Specifically, the trial justice noted that he was struck by the fact that the defendant "had violated 22 times and ha[d] served a decade in jail." The trial justice emphasized that "[t]hat's a lot of violations. That's a lot of disrespect for the sentence that you're on, for listening to the court, for abiding by the terms of your sentences. * * * [Y]ou have a 20-year history of ignoring the court's order and your sentences. That's offensive * * *." While resisting arrest may not warrant such a severe sanction in other circumstances, this case is not among them.

- 15 -

within his discretion in determining what portion of the defendant's suspended sentence should be executed and what portion should remain suspended.

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The papers in this case may be returned to the Superior Court.

# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI 02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. James R. Perkins. |
| **Case Number** | No. 2021-104-C.A. (P2/12-3024A) |
| **Date Opinion Filed** | May 25, 2023 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Richard D. Raspallo |
| **Attorney(s) on Appeal** | For State: <br><br> Christopher R. Bush <br> Department of Attorney General <br> For Defendant: <br><br> Camille A. McKenna <br> Office of the Public Defender |