STATE

v.

**Treze D. PARSON.**

No. 2002–108–C.A.

Supreme Court of Rhode Island.

March 29, 2004.

Aaron Weisman, Esq., Providence, for Plaintiff.

Paula Lynch, Esq., for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY, and SUTTELL, JJ.

## OPINION

PER CURIAM.

The defendant, Treze D. Parson, appeals from a Superior Court judgment denying his motion to correct an illegal sentence. The defendant argues that G.L.1956 § 12–19–9 prohibits a sentencing justice from executing the previously suspended sentence of a probation violator beyond the end of the originally imposed term of probation. He asserts, therefore, that the violation hearing justice lacked authority to order him to serve the entire ten years of his suspended sentence when less than two years remained on his ten-year period of probation. This case came before the Supreme Court for oral argument pursuant to an order directing the parties to show cause why the issues raised in this appeal should not summarily be decided. Upon hearing the arguments of counsel and examining the memoranda filed by the parties and the record of the proceedings below, we conclude that cause has not been shown and that the case should be decided at this time. We deny the appeal.

On May 6, 1992, defendant pled *nolo contendere* to charges of assault with a dangerous weapon, kidnapping, simple assault, and breaking and entering, and received a ten-year suspended sentence with a probationary period of ten years. The defendant subsequently was presented as a violator, and on June 27, 2000, the hearing justice determined that defendant violated the terms and conditions of his probation, based upon new charges of possession of heroin, resisting arrest, and simple assault.[1] He then ordered defendant to serve the entire ten years of the original sentence that previously had been suspended.

On March 1, 2001, defendant filed a motion to correct an illegal sentence pursuant to Rule 35 of the Superior Court Rules of Criminal Procedure. The motion was heard and denied by the hearing justice on March 30, 2001. The defendant filed a timely appeal to this Court, arguing that he was entitled to relief under § 12–19–9.

■ The defendant's argument for relief under § 12–19–9 has no merit. That section provides in pertinent part:

"Upon a determination that the defendant has violated the terms and conditions of his or her probation the court * * * may remove the suspension and order the defendant committed on the sentence previously imposed, or on a lesser sentence, or impose a sentence if

---

1. The defendant later pled *nolo contendere* to these offenses and was sentenced to three years suspended, with probation, on the possession of heroin charge and one year suspended, with probation, on the resisting arrest and simple assault charges.

one has not been previously imposed, or may continue the suspension of a sentence previously imposed, as to the court may seem just and proper."

The statute is clear and unambiguous. If a defendant violates the terms of his or her probation, the court may remove the suspension and order the defendant to serve the entire portion of any sentence that previously was imposed but suspended, or any lesser sentence that the court determines is just. A suspended sentence, however, does not begin to run until it is executed. *See State v. Heath,* 742 A.2d 1200, 1202 (R.I.2000) (per curiam).

 It is evident from his memorandum that defendant mistakenly believes that a suspended sentence runs concurrently with the probationary period. Therefore, he contends, at the time of his probation violations in 2000, he already had "served" over eight years of his suspended sentence and was subject to only two more years. The defendant misunderstands, however, the function of the probationary period. During the probationary period, a defendant is required to "keep the peace and to remain on good behavior." *State v. Pinney,* 672 A.2d 870, 871 (R.I.1996) (per curiam). If a defendant violates the terms of probation, the hearing justice has the authority to execute part or all of the suspended sentence. *See, e.g., State v. Dale,* 812 A.2d 795, 799 (R.I.2002) (per curiam). No part of the suspended sentence runs until either the end of the probationary period or until the execution of all or some portion of it upon a determination that defendant violated probation. *Id.*

Like the sword of Damocles, the unexecuted portion of a probationer's suspended sentence hangs over his or her head by the single horsehair of good behavior, until such time as the term of probation expires.[2]

As John A. MacFadyen and Barbara Hurst explain in *Rhode Island Criminal Procedure* § 32.9 n. 2 at 308–09 (1988 ed.):

"When a sentence is suspended, it is actually *imposed;* only its execution is held in abeyance. The specified period of probation, which must accompany every suspended sentence, represents that period during which a defendant is at risk of having the suspension lifted, in which event s/he would have to serve the incarceration pronounced * * *. Thus, if a defendant were sentenced to two years' imprisonment, suspended, accompanied by a three-year period of probation, the defendant would be governed by the terms and conditions of probation for three years following the pronouncement of sentence. If s/he violated probation, the suspension could be lifted, execution ordered, and s/he would be liable to serve up to two years in prison. When sentence is suspended, there is a judgment of conviction and commitment and the adjudication is a 'conviction' for all purposes."

Sadly, for Mr. Parson, he severed the horsehair when he violated the conditions of his probation, and the sword of incarceration fell upon his head. With only two years remaining on the probationary sentence, the hearing justice properly executed the entire ten-year suspended sentence.

"The smile faded from the lips of Damocles. His face became ashy pale. His hands trembled. He wanted no

---

**2.** "Then he chanced to raise his eyes toward the ceiling. What was it that was dangling above him, with its point almost touching his head? It was a sharp sword, and it was hung by only a single horse-hair. What if the hair should break? There was danger every moment that it would do so." *The Sword of Damocles, in* Favorite Tales of Long Ago, 97, 98–99 (retold by James Baldwin 1955 Aladdin Books).

more food; he could drink no more wine; he took no more delight in the music. He longed to be out of the palace, and away, he cared not where." *The Sword of Damocles, in* Favorite Tales of Long Ago, 97, 99 (retold by James Baldwin 1955 Aladdin Books).

Accordingly, we deny the defendant's appeal, and affirm the judgment of the Superior Court, to which we return the papers in this case.