November 16, 2017

**Supreme Court**

| | | |
|---|---|---|
| Eric Neufville | : | No. 2016-125-Appeal. |
| | | (PM 14-461) |
| v. | : | No. 2016-124-C.A. |
| | | (P2/12-1323A) |
| State. | : | No. 2016-123-C.A. |
| | | (P2/11-1362A) |
| | | No. 2016-122-C.A. |
| State | : | (P1/14-1594AG) |
| | | No. 2016-121-C.A. |
| v. | : | No. 2016-120-C.A. |
| | | (P2/03-3234AG) |
| Eric Neufville. | : | No. 2015-362-C.A. |
| | | (P2/03-3184A) |

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

| | | |
|---|---|---|
| Eric Neufville | : | No. 2016-125-Appeal. |
| | | (PM 14-461) |
| v. | : | No. 2016-124-C.A. |
| | | (P2/12-1323A) |
| State. | : | No. 2016-123-C.A. |
| | | (P2/11-1362A) |
| | | No. 2016-122-C.A. |
| State | : | (P1/14-1594AG) |
| | | No. 2016-121-C.A. |
| v. | : | No. 2016-120-C.A. |
| | | (P2/03-3234AG) |
| Eric Neufville. | : | No. 2015-362-C.A. |
| | | (P2/03-3184A) |

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Indeglia, for the Court.**  Following a probation-violation hearing in August 2014, Eric Neufville (Neufville or defendant) was found to have violated the terms of his probation and was sentenced to serve sixteen years in prison.  The defendant appeals the hearing justice's sentencing determination on the probation violation and his denial of a motion for reconsideration.[1]  This case came before the Supreme Court on October 4, 2017, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After hearing arguments of counsel and reviewing the parties' memoranda, we are satisfied that cause has not been shown.  Accordingly, we shall decide the appeal at this time without further briefing or argument.  For the reasons set forth herein, we affirm the judgment of the Superior Court.

---

[1] At oral argument, defendant conceded that he was only challenging the sentencing portion of the violation hearing, along with the hearing justice's denial of his motion to reconsider.

# I

## Facts and Travel

On January 23, 2014, defendant was presented as a probation violator pursuant to Rule 32(f) of the Superior Court Rules of Criminal Procedure. The state alleged that Neufville committed a robbery on December 27, 2013 while on probation.[2] The facts regarding the details of the robbery are largely undisputed.[3]

On December 27, 2013, Bonnie Aguilar and her boyfriend, Nicolas Petrucci, were robbed at gunpoint in their apartment by two men impersonating undercover Providence police officers.[4] Around 10:30 p.m., Petrucci answered a knock at the door of their apartment. After some commotion at the door, an African-American male later identified as defendant pointed a gun in Aguilar's face, forcibly entered the apartment, and handcuffed Aguilar and Petrucci. The defendant was with an accomplice, described as a white male. Petrucci's friend, Travis Greer, accompanied the two men to the apartment after the pair had threatened him with criminal charges.[5] It is uncertain whether Greer also entered the apartment. The defendant and his accomplice ransacked the apartment, taking $200 in cash, an engagement ring, a two-carat

---

[2] The state moved to violate defendant on the terms of his probation in four cases: P2/03-3184A; P2/03-3234AG; P2/11-1362A; P2/12-1323A. The defendant appealed the violation hearing finding, denial of his motion to reconsider, and denial of bail (PM 14-461) with regard to the new robbery charge. Since the robbery charge was dismissed prior to oral argument, the issue of bail is moot.

[3] The defendant does not dispute that the robbery occurred, but instead argues that he was not the perpetrator.

[4] This Court was not provided the transcripts of the violation hearing. As a result, we base our rendition of the facts on those relayed in the hearing justice's probation-violation decision.

[5] At the violation hearing, Greer testified that he had sold marijuana to defendant on two occasions. After the second meeting, defendant appeared at Greer's apartment, identified himself as an undercover Providence police officer, and offered to drop potential criminal charges if Greer set up a buy with his supplier. Greer testified that he complied with defendant's orders, leading defendant and his accomplice to Petrucci's apartment on December 27, 2013.

diamond watch, assorted jewelry, a gift card, a Coach purse, an iPod, an iPad, and an Xbox from the apartment during the robbery.

At the probation-violation hearing, the state presented three witnesses: Aguilar, Greer, and Det. Ronald Riley. The defense presented one witness: Petrucci. At the hearing, Aguilar identified defendant as the African-American man who robbed them at gunpoint.

Aguilar recalled that defendant wore a cap at the time of the robbery. Additionally, Aguilar testified that defendant's behavior was "insane" and that he grew angrier when she denied having a safe in the apartment. The robbery lasted over an hour, and the hearing justice found that Aguilar stood in very close proximity to defendant for "a good part of that time."

Both Aguilar and Petrucci testified that, initially, the couple identified a different person as the alleged robber after looking at Greer's Facebook page. However, Providence police investigated further and identified defendant as another potential suspect. Aguilar later testified that, when Providence police asked her to look at a photo array, she "froze" and covered the man's head as if he wore a cap before identifying defendant as the African-American man in her apartment on December 27, 2013. At the hearing, Aguilar testified that she was "150 percent" sure that it was defendant who had been in her apartment.

Ultimately, the hearing justice found defendant to be a probation violator, concluding that he was "reasonably satisfied that [defendant] was the person who committed those acts * * *." On September 2, 2014, the hearing justice removed the suspension on the longest of defendant's sentences, thereby sentencing him to sixteen years.

Following the violation hearing, defense counsel learned that the state had failed to turn over a police statement made by Aguilar on the day after the robbery. In that statement to police, Aguilar described one attacker as a "white man * * * about 6'2 with a baseball cap, like, a

Boston Red Sox baseball cap" with a "navy blue hoodie, navy blue jeans." Aguilar characterized the second person as an African-American man, about five-feet-five inches tall, with a "black hoodie" and black jeans. When the police officer asked Aguilar if she saw the African-American attacker's head, Aguilar responded, "I could. He didn't have any facial hair," adding that he had short hair on his head. Further, Aguilar stated, "it was dark in our house," and she added that they "only had the little kitchen light" on when the attackers forced their way into the apartment.

On January 21, 2016, defendant filed a motion for reconsideration of the hearing justice's finding that defendant violated the terms of his probation, arguing that the hearing justice should reconsider his decision or give defendant another probation-violation hearing in light of the newly produced police statement. After review, the hearing justice denied defendant's motion for reconsideration.

The defendant has appealed the hearing justice's sentencing determination on the original violation and denial of his motion to reconsider.

## II

## Standard of Review

### A

### Probation Violation

"At a probation-violation hearing, [t]he sole issue for a hearing justice * * * is whether * * * the defendant has breached a condition of his or her probation by failing to keep the peace or remain on good behavior." *State v. Beaudoin*, 137 A.3d 726, 731 (R.I. 2016) (quoting *State v. Prout*, 116 A.3d 196, 202 (R.I. 2015)). A probation-violation hearing is "not part of a criminal prosecution;" therefore, "'the burden of proof at a probation-violation hearing is much lower than the standard of beyond a reasonable doubt used in criminal trials.'" *State v. Raso*, 80 A.3d

33, 42 (R.I. 2013) (quoting *State v. Ford*, 56 A.3d 463, 468 (R.I. 2012)). Further, "[t]he state need only show that reasonably satisfactory evidence supports a finding that the defendant has violated his or her probation." *Beaudoin*, 137 A.3d at 731 (quoting *Prout*, 116 A.3d at 202). "To determine whether the defendant has committed a violation, the hearing justice weighs the evidence and assesses the credibility of the witnesses." *Id.* at 731-32 (quoting *State v. Barrientos*, 88 A.3d 1130, 1133 (R.I. 2014)).[6]

On review, "[t]his Court accords great deference to the hearing justice's credibility assessments." *Beaudoin*, 137 A.3d at 732 (quoting *Prout*, 116 A.3d at 202). It is well founded that this Court "will not second-guess supportable credibility assessments of a hearing justice in a probation-revocation hearing." *Id.* (quoting *Prout,* 116 A.3d at 202). Instead, this Court's "review is limited to considering whether the hearing justice acted arbitrarily or capriciously in finding a violation." *Id.* (quoting *Prout*, 116 A.3d at 202).

As to sentencing, after finding a defendant to be a probation violator, "[a] trial justice has wide discretion to determine whether to execute any or all of a defendant's previously suspended sentence." *State v. McKinnon-Conneally*, 101 A.3d 875, 879 (R.I. 2014). Further, "[w]hen a hearing justice is deciding how much of a previously suspended sentence to execute, his or her primary focus should be on the nature of the first offense," but "[t]he circumstances of the second offense * * * may also be taken into account." *Id.* Thus, "[t]his Court's 'review of a probation-violation sentence is for an abuse of discretion only.'" *State v. Fairweather*, 138 A.3d 822, 829 (R.I. 2016) (quoting *McKinnon-Conneally*, 101 A.3d at 879).

---

[6] Although it has no effect on this case, on June 21, 2016 the burden of proof for probation violations was amended to "a fair preponderance of the evidence." *State v. Giard*, 155 A.3d 1193, 1199 n. 9 (R.I. 2017) (quoting *In re Amendments to Superior Court Rules of Criminal Procedure and Sentencing Benchmarks* at 1 (R.I., filed June 21, 2016) (mem.)).

**B**

**Motion for Relief from Final Judgment**

A motion for relief from a judgment made pursuant to Rule 60(b) of the Superior Court Rules of Civil Procedure "is left to the sound discretion of the trial justice and such a ruling will not be disturbed absent an abuse of discretion." *Turdo v. Main*, 132 A.3d 670, 680 (R.I. 2016) (quoting *Berman v. Sitrin*, 101 A.3d 1251, 1260 (R.I. 2014)).

**III**

**Discussion**

**A**

**Credibility Assessment**

On appeal, defendant argues that the hearing justice acted arbitrarily or capriciously in finding Aguilar's identification to be credible. The defendant also contends that Aguilar's "prior inconsistent police statement" combined with her prior misidentification of another man on Facebook undermined her credibility. The defendant states that Aguilar's December 28, 2013 police interview is inconsistent with her hearing testimony because she never mentioned in the interview that defendant wore a hat, but did specifically mention that the white assailant wore a "dark blue Boston Red Sox hat." Finally, defendant argues that the hearing justice's credibility determination is not supported by the record, particularly in light of the newly produced evidence.

**1**

**Probation Violation**

Though defendant challenges only the sentencing portion of the probation-violation determination, we will first briefly address the hearing justice's finding of violation. At the

conclusion of the violation hearing, the hearing justice articulated that "the credibility of witnesses is extremely important in [probation-violation] cases" because there is a low standard for finding a violation. He stated that "the starting point * * * for this Court is Ms. Aguilar's testimony." The hearing justice found Aguilar to be "very credible" and "her testimony to be compelling and certainly worthy of belief," even after noting her prior misidentification. Specifically, the hearing justice considered Aguilar's testimony to be "measured," "very authentic," and found that "[s]he had an excellent memory of the events of that evening." Further, the hearing justice stated that "in this courtroom [Aguilar] said she's * * * 150 percent certain it was the defendant in her apartment on December 27[]." As to the other witnesses, the hearing justice concluded that "[t]he other witnesses * * * did provide some corroborating evidence and corroborating facts that give [Aguilar's] testimony even more credibility in the eyes of this Court."

Our review of the record reflects that the hearing justice considered the tone of Aguilar's testimony, her ability to remember clearly the facts of that night, and her certainty in identifying defendant. The hearing justice also took into account Aguilar's misidentification, along with the other witnesses' credibility and corroborating testimony in making his decision. Therefore, the hearing justice did not act arbitrarily or capriciously when he found Aguilar to be a credible witness at the probation-violation hearing.

**2**

**Motion for Reconsideration**

We take this opportunity to note that no authority exists for the filing of a motion to reconsider. *See School Committee of Cranston v. Bergin-Andrews*, 984 A.2d 629, 649 (R.I. 2009). The closest authority to it would be pursuant to Rule 60(b), under which in civil cases

such as this, review can be had for fraud, misrepresentation, or other misconduct of an adverse party if the motion is filed within twelve months of the judgment. Rule 60(b)(3); *see Turacova v. DeThomas*, 45 A.3d 509, 514-15 (R.I. 2012). Here, defendant's motion for reconsideration was filed more than sixteen months after the judgment.[7] As such, it was not properly before the Court. Even if timely, it would have been of no avail to defendant.

At the hearing on defendant's motion, the hearing justice acknowledged that his probation-violation decision relied heavily on Aguilar's testimony. The hearing justice further acknowledged that the December 28, 2013 statement, unlike Aguilar's testimony during the probation-violation hearing, did not "say definitively [defendant] was wearing a hat," but that Aguilar "does say [defendant] was wearing a hoodie or some type of a hood-type of sweatshirt * * *." The hearing justice found no "material in here that would have, in any way, in any significant fashion, have undermined what [Aguilar] said on the stand under oath and what this Court embraced as accurate and credible and trustworthy in reaching this decision that it reached."

In deciding the motion, the hearing justice looked to the transcript of the probation-violation decision, his own notes of Aguilar's testimony, and the new evidence—Aguilar's December 28, 2013 statement to police. The hearing justice concluded that "[t]here is some material in there, but I just don't think it's that kind of substantial difference in testimony between the prior statement and what someone says at trial that would have been game changing

---

[7] After a review of the transcript, it appears that the hearing justice did not address the issue of whether defendant's motion for reconsideration was appropriately before him, and he decided the motion on the merits. While the motion very well may have been improper, *see State v. English*, 21 A.3d 403, 406 n. 8 (R.I. 2011), the state appears to concede that no objection was raised when defendant filed it. *See State v. Barros*, 148 A.3d 168, 172 (R.I. 2016).

or even significant." After taking all of these factors into account, the hearing justice still found Aguilar to be credible.

In reviewing defendant's motion, the hearing justice weighed Aguilar's credibility in light of the new evidence presented to him and remained reasonably satisfied that defendant robbed Aguilar and Petrucci. Based on this determination, the hearing justice found that defendant did not keep the peace or act with good behavior, and therefore denied the motion. He did not err in doing so.

**B**

**Sentencing**

The defendant contends that the hearing justice abused his discretion in executing the remaining sixteen years of his suspended sentence because he mostly looked at defendant's overall criminal record and the new offense, rather than focusing on the matters for which he was on probation. This Court has held that "the unexecuted portion of a probationer's suspended sentence hangs over his or her head by the single horsehair of good behavior, until such time as the term of probation expires." *McKinnon-Conneally*, 101 A.3d at 879 (quoting *State v. Parson*, 844 A.2d 178, 180 (R.I. 2004)). Additionally, a hearing justice may consider a defendant's prior record when determining an appropriate sentence for a probation violator. *See Fairweather*, 138 A.3d at 829.

Here, the Court has not been provided with the transcript of the hearing justice's sentencing decision. In its brief, the state refers to a part of the sentencing hearing where the hearing justice considered defendant's overall criminal record and, in part, the new offense. However, without the transcript, we are unable to review the hearing justice's entire assessment of factors leading to his sentencing decision. We have stated that it is a "defendant's

responsibility to provide those portions of the trial transcript that are necessary for this Court to perform a meaningful review." *Shorrock v. Scott*, 944 A.2d 861, 864 (R.I. 2008). Further, "[t]he deliberate decision to prosecute an appeal without providing the Court with a transcript of the proceedings in the trial court is risky business." *Id.* (quoting *731 Airport Associates, LP v. H & M Realty Associates, LLC*, 799 A.2d 279, 282 (R.I. 2002)).

In any case, the defendant's prior offenses for which he was sentenced to probation included charges of two counts of felony assault, one count of assault with intent to commit a felony, and one count of carrying a pistol without a license. Based on these underlying convictions, coupled with the new robbery offense, the hearing justice was well within his discretion to impose the defendant's full sixteen-year sentence.

## IV

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The papers may be remanded to that tribunal.

STATE OF RHODE ISLAND AND  PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State of Rhode Island v. State. State v. Eric Neufville. |
| **Case Number** | No. 2016-125-Appeal. (PM 14-461) No. 2016-124-C.A. (P2/12-1323A) No. 2016-123-C.A. (P2/11-1362A) No. 2016-122-C.A. (P1/14-1594AG) No. 2016-121-C.A. No. 2016-120-C.A. (P2/03-3234AG) No. 2015-362-C.A. (P2/03-3184A) |
| **Date Opinion Filed** | November 16, 2017 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Gilbert V. Indeglia |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Daniel A. Procaccini |
| **ttorney(s) on Appeal** | For State: Aaron L. Weisman Department of Attorney General For Defendant: Paula Lynch, Esq. |