June 17, 2022

**Supreme Court**

No. 2021-101-C.A.
(W1/12-298A)

No. 2021-102-C.A.
(W2/13-248A)

|  |  |
|---|---|
| State | : |
| v. | : |
| Charles Kenner. | : |

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

|        |   |
|--------|---|
| State  | : |
| v.     | : |
| Charles Kenner. | : |

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.** In these consolidated appeals, the defendant, Charles Kenner, appeals from two judgments of the Superior Court finding him to be in violation of the terms of his probation and sentencing him to serve portions of previously imposed suspended sentences. These cases came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in these appeals should not be summarily decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that these appeals may be decided without further briefing or argument. For the reasons stated in this opinion, we affirm the judgments of the Superior Court.

# I

## Facts and Travel

In 2012, defendant was charged with four counts of first-degree sexual assault, four counts of first-degree child molestation sexual assault, and one count of second-degree child molestation sexual assault (the 2012 case). In 2013, defendant was charged with one count of entering a dwelling with felonious intent (the 2013 case). The defendant subsequently pled nolo contendere to one count of first-degree sexual assault and one count of breaking and entering.[1] In the 2012 case, defendant was sentenced to fifteen years at the Adult Correctional Institutions, with eight years to serve and the remaining seven years suspended, with probation. In the 2013 case, defendant was sentenced to five years at the ACI with the entire sentence suspended, with probation. The sentences were to run concurrently.

On December 21, 2020, the state filed notices of probation violation in both underlying cases, pursuant to Rule 32(f) of the Superior Court Rules of Criminal Procedure. On March 31, 2021, a justice of the Superior Court held a combined violation and bail hearing for the new 2020 charge. The hearing was also consolidated with a hearing on probation-violation charges against Jason Shepard, who was alleged to have also been involved in the incident giving rise to the notices

---

[1] The state voluntarily dismissed the remaining counts in the 2012 case pursuant to Rule 48(a) of the Superior Court Rules of Criminal Procedure.

of probation violation filed against defendant. During the hearing, two witnesses testified about the incident and some of the following events. We now summarize the salient evidence presented at the hearing.

The first witness to testify was Nicholas Dubois. Dubois testified that on November 27, 2020, he agreed to meet with Shepard, known to him as Jay, to trade shoes for drugs. Dubois stated that at around 11:30 a.m. he drove his vehicle to the agreed-upon location, where he observed defendant, Shepard, and a woman arrive together in a gray SUV. According to Dubois, defendant was familiar to him because he had seen him "a couple of other times[,]" including on at least one occasion as part of a prior drug transaction.

Dubois testified that defendant and Shepard then got into Dubois's vehicle, where defendant tried on the shoes. According to Dubois, after about ten minutes of being in the car together, defendant, who was sitting behind Dubois, choked Dubois with the crook of his elbow and held something—at times Dubois stated the object was a knife—up to Dubois's throat.[2] Dubois initially testified that, while

---

[2] As the hearing justice later noted, the testimony regarding what exactly defendant held up to Dubois's throat was "relatively inconsistent[.]" Initially Dubois testified that defendant held a knife to his throat, but later he testified that he was not sure whether it was a knife or another object. Dubois also testified that Shepard had a knife, and when questioned, he stated that he was unsure if both defendant and Shepard had knives.

Additionally, the second witness, Detective Robert Malaragno, presented a version of events that did not include defendant having a knife. Detective Malaragno testified that he prepared an affidavit in connection with this case based on

- 3 -

defendant choked him, Shepard was in the passenger seat threatening to stab Dubois if he moved; however, Dubois later testified that it was defendant who threatened to stab him if he moved.

Dubois further testified that Shepard ultimately did stab him, in multiple places, and hit him in the eye, and the state introduced as exhibits photographs of Dubois's injuries. According to Dubois, after being stabbed by Shepard, he began fighting Shepard, and eventually he was pushed into the passenger seat, where defendant again choked him from behind. Dubois testified that Shepard then began driving Dubois's vehicle and that, eventually, after some struggle, Dubois was able to jump out of the vehicle. According to Dubois, defendant and Shepard then drove away in Dubois's car.

Dubois further testified that, after exiting his vehicle, he called 911 and reported his vehicle as stolen. Dubois stated that, due to his injuries, he spent the night at Rhode Island Hospital, where he spoke with detectives about the incident. Dubois also testified that he identified both defendant and Shepard in a photographic lineup.

---

information he obtained from Dubois. Detective Malaragno further testified that this affidavit described only Shepard, and not defendant, as having a knife.

Dubois further testified that he struggled with substance-abuse issues, and that he had a criminal record. Dubois also testified that he was on probation when the incident occurred.

The second and final witness to testify was Detective Robert Malaragno. Detective Malaragno testified that he spoke with Dubois about the incident in his capacity as a Providence police officer. Detective Malaragno further testified that, based on the information Dubois provided him, he identified defendant and Shepard as suspects. According to Det. Malaragno, he then put together a photographic array that included defendant and Shepard, and Dubois identified both individuals as having been involved in the incident.

The defendant rested without presenting any evidence. After hearing the testimony, the hearing justice delivered a bench decision.

The hearing justice began by stating that the evidence was "relatively straightforward." He found that Dubois was a "frequent purchaser" of drugs around the time of the incident and that he communicated with Shepard to set up a trade for drugs. He further found that defendant and Shepard entered Dubois's vehicle, and that after they talked for a while, the "interaction * * * turned violent[.]"

With respect to defendant's role, the hearing justice found that the testimony was "relatively inconsistent" as to whether defendant had a knife. He found, however, that defendant was present during the incident and did engage in some

activity. The hearing justice found that defendant "choked [Dubois] with his arm around his neck and said something like, 'Don't move or I'll stab you.'" The hearing justice further found that Dubois identified defendant in a photographic array, as well as in court, and that the attack was corroborated by Dubois's injuries as memorialized in the photographic exhibits presented by the state. Ultimately, the hearing justice held that the evidence was "straightforward" and "preponderant" that defendant failed to keep the peace and be of good behavior.

The hearing justice ordered defendant to concurrently serve six years of his suspended sentence in the 2012 case, with the remaining one-year balance suspended, with probation, and five years of his suspended sentence in the 2013 case, representing the entirety of that suspended sentence. Separate judgments of conviction on the probation violation entered in each case on April 21, 2021. These appeals resulted.

## II

### Validity of Appeals

Initially, we must decide whether each appeal is properly before us. The defendant filed a notice of appeal in the 2012 case on April 1, 2021. Although final judgment did not enter until April 21, 2021, this Court has repeatedly held that "a premature notice of appeal will be considered timely so long as a final judgment is entered thereafter." *State v. Lamontagne*, 231 A.3d 1132, 1138 n.2 (R.I. 2020)

(quoting *State v. Souto*, 210 A.3d 409, 415 n.8 (R.I. 2019)). Therefore, defendant's appeal of the 2021 judgment in the 2012 case was timely and is properly before us.

However, no notice of appeal was ever filed in the 2013 case. Although the notice of appeal filed in the 2012 case listed both cases as being appealed, demonstrating an intention by defendant to appeal both probation-violation convictions, defendant asserts that the notice of appeal was "inadvertently only filed" in the 2012 case and was not filed in the 2013 case.[3]

This Court's rules require a properly filed notice of appeal for each case, even in consolidated cases. Article I, Rule 3 of the Supreme Court Rules of Appellate Procedure; *Martin v. Lilly*, 505 A.2d 1156, 1159 (R.I. 1986). Nonetheless, "[i]n the absence of statutory jurisdiction, this Court has discretion in determining whether to grant petitions for certiorari." *State v. Bienaime*, 263 A.3d 77, 83 (R.I. 2021) (brackets omitted) (quoting *Davis v. Rhode Island Board of Regents for Education*,

---

[3] The defendant does allege that, in February 2022, a clerk of the Washington County Superior Court "corrected" the 2013 case's docket "to reflect that the [n]otice of [a]ppeal was filed on April 1, 2021." The 2013 case's docket now reflects this "correction," as it lists a notice of appeal filed on April 1, 2021. Importantly, however, the notice-of-appeal document that corresponds to that entry is a copy of the notice of appeal filed and stamped for the 2012 case; it does not contain a stamp indicating it was ever filed in the 2013 case. Because defendant never alleges that he transmitted a notice of appeal in the 2013 case such that it was filed, and because there is no such notice of appeal properly stamped with the 2013 case's information, we determine that, despite the "correction" to the docket, defendant has in effect conceded that there was never a notice of appeal filed in the 2013 case. *See* Article X, Rule 1(c)(6) of the Supreme Court Rules Governing Electronic Filing.

121 R.I. 473, 477, 399 A.2d 1247, 1249 (1979)). Therefore, because defendant clearly demonstrated an intent to appeal both cases in a timely fashion because both case numbers were indeed listed on the notice of appeal filed in the 2012 case, we will exercise our discretion and "nevertheless review this case as though defendant had filed a common law petition for writ of certiorari so that we may avoid depriving defendant of the opportunity to seek review of his criminal conviction." *State v. Sanchez*, 206 A.3d 115, 121 n.6 (R.I. 2019).

Accordingly, we proceed to the merits of defendant's argument on both 2021 judgments, in the 2012 case and the 2013 case.

### III

### Conviction for Probation Violation

On appeal, defendant contends that the hearing justice erred in finding that he failed to keep the peace and be of good behavior and therefore that he violated his probation. Specifically, defendant argues that the testimony the hearing justice relied on was inconsistent and that Dubois was not credible as a witness. Additionally, defendant avers that the hearing justice erred by conflating defendant with Shepard, as defendant asserts that there was enough evidence to find that Shepard had violated his probation, but not enough evidence to find that defendant had violated his probation.

"At a probation-violation hearing, the sole issue for a hearing justice is whether the defendant has breached a condition of his or her probation by failing to keep the peace or remain on good behavior." *State v. Molina*, 251 A.3d 485, 493 (R.I. 2021) (quoting *Neufville v. State*, 172 A.3d 161, 165 (R.I. 2017)). "[T]he burden of proof at a probation-violation hearing is much lower than the standard of beyond a reasonable doubt used at criminal trials." *Id.* (quoting *Neufville*, 172 A.3d at 165). To prove a violation, "the state must establish 'by a fair preponderance of the evidence'" that the defendant violated their probation. *State v. Segrain*, 243 A.3d 1055, 1061 (R.I. 2021) (emphasis omitted) (quoting *State v. D'Amico*, 200 A.3d 1068, 1071-72 (R.I. 2019)). "To determine whether the defendant has committed a violation, the hearing justice weighs the evidence and assesses the credibility of the witnesses." *Molina*, 251 A.3d at 493 (quoting *Neufville*, 172 A.3d at 165).

"This Court's review of a hearing justice's decision in a probation-violation proceeding is limited to considering whether the hearing justice acted arbitrarily or capriciously in finding a violation." *State v. Chandler*, 225 A.3d 946, 947 (R.I. 2020) (brackets omitted) (quoting *State v. Wiggins*, 919 A.2d 987, 989 (R.I. 2007)). "[D]eference should be accorded 'to the assessment of the credibility of witnesses made by a judicial officer who has had the opportunity to listen to live testimony and to observe demeanor.'" *Segrain*, 243 A.3d at 1062 (quoting *State v. Washington*, 42 A.3d 1265, 1271 (R.I. 2012)). Accordingly, we "will not second-guess

supportable credibility assessments of a hearing justice in a probation-revocation hearing." *Molina*, 251 A.3d at 493 (quoting *Neufville*, 172 A.3d at 165).

Here, the hearing justice's reliance on Dubois's testimony is supportable and therefore deserves deference. In his assessment, the hearing justice recognized that Dubois's testimony had some inconsistencies and was not always entirely clear. The hearing justice noted that perhaps Dubois's testimony was "somewhat convoluted * * * because of the nature of the event," a violent robbery. The hearing justice also stated that at least some inconsistencies could be explained, in a way that "is not hard to believe given the circumstances," by Dubois not being calm when he initially spoke with police or by his being "reluctant to identify" the suspects at that time. Indeed, Dubois's testimony indicated that he was on probation at the time of the incident, and that participating with a police investigation of the robbery necessarily meant admitting that he was involved in seeking drugs.

However, the hearing justice also found that the majority of the evidence presented at the hearing was "relatively straightforward." Notably, Dubois never wavered in his testimony that defendant was present in the vehicle both during the violent altercation and when Shepard drove the vehicle away, and that defendant choked him. Thus, the hearing justice's reliance on Dubois's testimony, after recognizing its faults and commenting on possible explanations for those faults, was

not arbitrary or capricious, and we will not, on review, second-guess the hearing justice's findings based on that testimony.

Additionally, we note that the hearing justice also relied on evidence outside of Dubois's testimony, including photographs of Dubois's injuries and Det. Malaragno's testimony, in concluding that the state had met its burden for demonstrating evidence of a probation violation.

Furthermore, although defendant is correct that the hearing justice referred to defendants together in stating his finding that both defendant and Shepard committed probation violations, throughout his analysis the hearing justice considered defendant's and Shepard's actions separately. The hearing justice found that defendant was present in the car, choked Dubois around the neck, and threatened him. The hearing justice attributed separate actions to Shepard, such as stabbing Dubois and hitting him in the eye. The hearing justice also clearly noted that Dubois identified both defendant and Shepard through a photographic array. Thus, we cannot conclude that the hearing justice committed any error in regard to conflating defendant and Shepard, as he mentioned them together for the sole purpose of issuing his ultimate conclusion.

Lastly, we find no support for defendant's contention that there was not enough evidence to support a finding that defendant failed to keep the peace and remain of good behavior. Although much of Dubois's testimony focused on

Shepard, there was also sufficient evidence to support the hearing justice's findings that defendant was involved in the incident, such as Dubois's consistent testimony that defendant choked him, his identification of defendant in a photographic lineup as the person who choked him, and his identification of defendant in court. Based on Dubois's testimony, we simply cannot agree with defendant's assertions that he was "barely mentioned in the testimony" given at the hearing, that Dubois "guessed" at defendant's presence in the vehicle, and that defendant's involvement in the incident "was questionable and unclear."

Importantly, even without a finding that the defendant held up a knife to Dubois's throat, the actions the hearing justice *did* find that the defendant engaged in are more than adequate to support a conclusion that the defendant violated his probation. "[T]his Court has stated that there is no requirement that conduct be criminal in nature in order to amount to a failure to keep the peace and remain of good behavior." *Molina*, 251 A.3d at 493. Certainly, participating in a drug-trade-turned-robbery is not, under any definition of the term, good behavior. Accordingly, the defendant's argument that there was insufficient evidence to support a finding that he violated his probation is unavailing.

## IV

## Conclusion

For the reasons stated herein, we affirm the judgments of the Superior Court.

The records shall be returned to the Superior Court.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Charles Kenner. |
| **Case Number** | No. 2021-101-C.A. (W1/12-298A) <br><br> No. 2021-102-C.A. (W2/13-248A) |
| **Date Opinion Filed** | June 17, 2022 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Washington County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Luis M. Matos |
| **Attorney(s) on Appeal** | For State: <br><br> Virginia M. McGinn <br> Department of Attorney General <br><br> For Defendant: <br><br> Ferenc Karoly, Esq. |